DUFRESNE, Judge.
The primary issue in this suit is the proper interpretation of certain provisions of La.R.S. 4:163(E)(Seventh), providing for distribution by the City of Kenner of a portion of the fees, commissions and monies generated by the horse racing track located in Jefferson Parish. The statute provides that of such funds remaining after payment of certain other specified amounts:
[Tjhirty per cent [is to be distributed] to the governing authority of the City of Kenner to be used for the purposes and in the order of priority hereinafter set forth:
(1) To increase the salaries of all permanent employees of the police and fire departments by five percent for the year 1980 and for each year thereafter until an increase in like amount has been paid for each of five years, which five percent salary increase shall be in addition to, rather than in lieu of, all or any portion of any employee's base salary, benefits,, or any other salary increases.
(2) To purchase policies of insurance covering members of the Kenner Volunteer Fire Department and the Ken-ner auxiliary policemen which shall provide benefits in like kind and amounts as is provided under the worker’s compensation laws but which shall be in addition to worker’s compensation benefits.
(3)To assist in defraying the cost of the operations of the city government.
A second question concerns the firemen’s two percent annual longevity pay raise required by La.R.S. 33:1992. The five percent salary increases were given to the firemen for fiscal year 1980-81 through 1983-84, but were not given to them in the 1984-85 fiscal year because Kenner’s share of the race track proceeds was insufficient for these additional costs. The Kenner Fire Fighters Association and several firemen, brought suit to obtain this raise, and judgment was rendered partially in their favor. The City of Kenner has appealed that judgment, and the plaintiffs have cross-appealed. Because we find that the City of Kenner’s position in this matter is correct, we reverse the judgment of the trial court.
The following table shows the pertinent salary increases received by Kenner firemen:
Fiscal Year Raises
1980/81 5% & 2%
1981/82 5% & 2%
1982/83 5% & 2%
1983/84 5% July 83
8% Jan. 7, 84 (all city workers)
1984/85 6% Jan. 85 (all city workers)
5% Bonus
There is no real dispute that the “5% & 2% figures for the first three years at issue represented what all parties refer to as the five percent race track raises and the 2 percent longevity raises. The first problem arose, therefore, at the beginning of fiscal year 1983/84. The record shows that the City gave the firemen a five percent raise at the beginning of that year. In November, 1983, the present suit was filed. The firemen contended that because La.R.S. 4:163(E)(Seventh) specified that the five percent race track raises were to be over and above all other raises, they were entitled to an additional two percent longevity raise as per La.R.S. 33:1992. In January, 1984, all city workers, including the firemen, received an additional 8% raise, which coming in the middle of the fiscal year, *795 amounted to an effective four percent for the entire year. Thus, whatever the merits of the original petition might have been, any problems with the two percent per year longevity raise were resolved by the subsequent eight percent raise. See Turner v. City of Shreveport, 437 So.2d 961 (La.App. 2nd Cir.1983).
However, the evidence now before us shows that the City has received only some $400,000 per year from the race track since 1980. It also shows that the race track raises given the firemen between 1980/81 and 1982/83 were cumulated by the City, and that in 1983/84, the additional five percent for that year pushed the accumulated annual costs of those raises to about $500,000. The City was thus forced to use some $100,000 of general revenue funds to cover the five percent raise at the beginning of that fiscal year.
At the beginning of the 1984/85 fiscal year, no firemen’s raises were given, but in January, 1985, a six percent raise was given to all city workers, including the firemen. As noted above, this clearly met the two percent annual longevity raise requirement. In February, 1985, the firemen amended their original petition and asserted that they were also entitled to an additional five percent race track raise.
In further discussions, the City agreed to give the firemen a five percent bonus for 1984/85, but declined to make this a raise. The City’s position then, which it reurges here, was that the money received from the race track was already $100,000 less than required to fund the accumulated first four years of the race track raises, and to add an additional five percent would require the City’s general revenue fund to bear an even greater financial burden. It further argues that were La.R.S. 4:163(E)(Seventh) to be interpreted as a legislative mandate for expenditure of municipal funds for employee salaries, then the act would violate La. Constitution (1974) Art. 6, § 14. The firemen argue to the contrary that it is precisely Art. 6, § 14, which compels the City to grant these raises regardless of how they are funded.
The text of Art. 6, § 14, is as follows:
§ 14. Increasing Financial Burden of Political Subdivisions
Section 14. No law requiring increased expenditures for wages, hours, working conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivision employees, except a law providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided. The Section shall not apply to a school board.
The City urges that the race track raises cannot be viewed as being within the “minimum wages ... for firemen” exception, because La.R.S. 4:163(E)(Seventh) is limited in its application to firemen in only one specified municipality of the state, and therefore does not represent any state-wide policy to set a minimum floor for all firemen’s salaries. It further urges that were the raises to be found to be within the “minimum wages” exception, then the legislation would violate Louisiana Constitution (1974) art. 3, § 13, which requires two publications in a local journal, not done in this case, of any local or special law before legislative enactment of such a law.
The firemen, for their part, assert that the power of the legislature is plenery under Art. 6, § 14, as to firemen’s wages, and that because the regulation of horse racing is a matter of state-wide concern, no law arising under the legislature’s power to control this sport can be construed as “local or special”. They contend, therefore, that the City must fund these raises from whatever source available to it.
As interesting as these constitutional issues may be, we see no need to reach them here, because in this court’s opinion, La. R.S. 4:163(E)(Seventh) is nothing more than a legislative mandate as to how funds from the race track are to be spent by the City *796 of Kenner, and in what priority. We find nothing in that statute which would suggest that the legislaiure intended to set a minimum pay scale for the Kenner firemen, or that it contemplated imposing upon the City any additional financial burden for firemen’s salaries, if the race track money were insufficient. Moreover, the provision in the statute which states that the race track raises “shall be in addition to, rather than in lieu of ... any other salary increases,” reinforces this interpretation of the law. The “other salary increases” can only refer to the two percent longivity raises and other increases funded by sources other than the race track money, be they the general fund of the City or special millages for firemen. Thus, once the race track money became insufficient to fund the five percent race track raises, any additional raises funded by the City from other sources would constitute “other salary increases,” and not race track raises. The circularity of this problem is evident, and this court declines to construe the statute at issue here in a manner which would produce this absurd result. We finally note that we are aware of New Orleans Firefighters Assn. v. Civil Service Commission, 422 So.2d 402 (La.1982), but do not find that case applicable here.
For the above reasons, we conclude that La.R.S. 4:163(E)(Seventh) is nothing more than a formula for distribution of available funds from the race track by the City of Kenner, and that it does not mandate the City to expend funds from other revenue sources when the race track funds become insufficient to meet all of the priorities listed in the statute. We therefore reverse the judgment of the district court ordering the City of Kenner to grant additional raises to the firemen.
REVERSED AND RENDERED.